The case for today is 2018-40361, United States v. Daniel Salinas, and Mark Anthony Salinas. May it please the Court, Your Honors, the District Court reversibly erred by applying a 10-level enhancement under Guideline 2L1.1B7D for the death of a person. In Ramos-Delgado, this Court made clear that the 10-level enhancement applies only when a defendant's conduct is the but-for cause of the death. And this Court relied on Barrage, in which the Supreme Court held that but-for cause means actual causality. The Supreme Court also held that when a defendant's conduct is not the independently sufficient cause of death, the defendant cannot be held liable. This case is just like Barrage, in which the defendant ingested three drugs and died after ingesting the heroin sold to him by the defendant. Here, Mr. Salinas' transportation was not the but-for cause of death because it was not independently sufficient to cause Mr. Martinez's death. First, Mr. Martinez's death was caused by his choice to run and evade authorities. He was determined to evade authorities, as is shown in the PSR, because he's the one who made the smuggling arrangements for himself and two other aliens in the truck to be smuggled into the United States. Despite his heart disease, he walked for three hours in the brush to reach the road to be picked up, and there was no need to run. Two aliens in the truck chose not to run. One of those aliens was in the bed of the truck, said he was told to run, but did not run. There's no evidence Mr. Salinas instructed anyone else to run. And Gennaro Arriola, another alien who met up with Mr. Martinez in the brush, told him and another alien to go farther in the brush. It's thus a reasonable inference that it was Mr. Arriola who was giving instructions. Second — Would you acknowledge, of course, that the running from the scene is hardly unforeseeable, just as a practical matter? I'm not sure of that, Your Honor, because two aliens didn't run. So running or not running, I would say, is foreseeable. Okay. So you agree that running from the scene is foreseeable. I guess what strikes me is in the Ramos-Delgado case, frankly, the injury there was not nearly as foreseeable as this particular injury. I'm sorry. In the what case? The Ramos-Delgado. Given that fact pattern, it was the case you cited, I think, that the injury there had a little bit less foreseeability than here, and yet we found causation. I don't think so, Your Honor, because in Ramos-Delgado, the alien was in the bed of the truck, and it was the defendant who was driving the truck, and the alien was thrown from the truck while the defendant was driving recklessly. So there it's just — it's the conduct of the defendant that did — that was the but-for cause of death. I would analogize. This is more like a Southwest Airlines pilot landing the plane at the gate in New Orleans Airport. A passenger gets off the plane and runs to catch the next plane and has a heart attack because he, being 28 years old, just like Mr. Martinez, has 100 percent of his arteries clogged. Now, you wouldn't say the airline pilot was the but-for cause of that death. Counsel, what do you think our current jurisprudence is with regard to the element of foreseeability? Your Honor, this Court three times has held — has declined to decide foreseeability in De Jesus Ojeda, Ramirez-Hernandez — I'm sorry, Rees-Hernandez and Ramos-Ramos, but it nevertheless went on and assumed that if foreseeability were necessary, that there the death was — or injury was foreseeable. In Zaldivar, the Eleventh Circuit adopted a foreseeability standard, and this Court should here, too, because there's a specific finding by the district court judge that neither Daniel nor Mark Salinas, quote, that they were not aware of Mr. Martinez's poor health and had no reason to know of his poor health. So — I mean, it changes. There's a great deal of difference in the analysis. If you have a — it's a pure but-for, or you also just an element of foreseeability. You're moving from but-for standard almost to approximate cause. And my — I guess rephrase my question is, if this panel were persuaded that foreseeability should be an element, two questions. One, does this case really present that issue? And two, would we be free under our rule of orderliness to adopt it? Your Honor, on the first question — I'm sorry, does this case present the issue of foreseeability? The answer is yes, more so than the other three cases, because here you have a specific finding that the defendants did not know, nor could they have known that the person who died was in poor health. So — By the word percent, I should be more clear. I meant that the presence or absence of foreseeability as a determinant or a significant factor in the outcome of the case. Well, yes, because if you determine that foreseeability were required, then there would be a conjunction of needing but-for cause and foreseeability. And as logic tells us, when you have a conjunction, you need both. And so it would be determinative, because without foreseeability, you couldn't satisfy both elements. What do you make of the hospital gas leak hypothetical? Do you remember that one? It's talked about at page 402 of Ramos-Delgado. The gas — I'm happy to read it to you if you're not familiar with it. Well, I remember in Ramos-Delgado, this court held that based on the medical record, he was thrown, he was transported to a different country. I'm talking about the hypothetical that the court embraced as — Oh, are you talking about the barrage hypothetical with the baseball players? No, the gas leak, because I think it illustrates very nicely that your intermediate — intervening cause-of-action theory doesn't quite work. If at the present — Are you talking about where he's transported to the hospital? I'm sorry. Correct. Yeah. The defendant's actions caused the hand of the passenger to be sprained, make him go to the hospital. The hospital then explodes from a gas leak. I think we can agree that's even more far-fetched than your Southwest pilot. Yet this Court said that would be but for causation. It's a pretty extreme hypothetical, and we embrace it. Sure. And I — yes, Your Honor. And I would say, number one, I think that's a complete misreading of barrage, because barrage says the cause has to be independently sufficient. And number two — Your point is you disagree with Ramos-Delgado's discussion, then. My point is I think that that's unnecessary and dicta. I mean, you can talk about hypotheticals and what would have happened if the defendant had been injured, transported to a hospital, and the water heater or the gas heater or whatever it was in their hypothetical blew up. But that's not part of the holding. But you can see that this but-forth hypothetical is far more extreme than what we're talking about here, where I think everybody can plausibly expect that when you engage in a crime like alien smuggling, trafficking, the chances of running from the scene are pretty good. It's certainly foreseeable. I don't think it's more far-fetched because, I mean, in my mind — A gas leak is more foreseeable? I think if Mr. Martinez ran or walked away from the truck and got hit from a meteor, it would be no different. There was 90 percent or to 100 percent clogging of the Widowmaker artery in his heart. It was just like a meteor hitting him. It didn't matter if he ran or didn't run or — I agree with you. The meteor would be an extreme hypothetical. I'm just saying that that's no different from the gas leak. We've apparently embraced even more far-fetched hypotheticals in this case. I agree that this is like getting hit with a meteor and that it's very far-fetched. And I don't think it's but-for cause because it's not independently sufficient. We have your argument. We have time for rebuttal. Thank you, Your Honor. May it please the Court. Gregory Tarley representing Mark Anthony Salinas, the co-defendant. In the case of Mark, the Court did note in the record that there were two flights from law enforcement. Mark was involved in the second flight of law enforcement. So the Court did note that this is a gray area and he is slightly more removed from the death. The death of Pedro Martinez-Ariola did not occur but for the alien smuggling conspiracy because the heart attack of Pedro Martinez-Ariola was his actual cause of death. And the Court disregarded the clear evidence presented at the sentencing of the heart disease of Pedro Martinez-Ariola. And the Court erred in assessing the plus-10 level enhancement in sentencing under 2L1.1B7. As this Court has held, the guideline 2L1.1B7 does not have a specific causation requirement. The Court in the Ramos-Delgado case did use the general causation of guideline 1B1.3, also citing the Supreme Court in Barrage. The Barrage case is instructive because it did define the actual causation using an example of A shoots B with the example that the shooting would be the actual cause of death and anything else would be auxiliary. So the District Court did specifically rule that the flight from law enforcement was the actual cause of death of Pedro Martinez-Ariola. And the District Court in Mark's record at 168 said, quote, I want to make the record very clear. But the record is also clear on evidence of the heart disease of Pedro Martinez-Ariola. The pathologist, Dr. Frank Salinas, who testified and also performed the autopsy on Pedro Martinez-Ariola, said that he was a time bomb. He said that there was total occlusion in the left anterior descending artery. He said there was 99 percent blockage. He said that Pedro Martinez-Ariola could have died while he was sitting at a table. And again, in the autopsy, the autopsy specifically stated there was total occlusion of the left anterior descending artery. Counsel, we have a large, rich array of jurisprudential inquiries into causation and relationships, whether you approximate throughout the First Amendment, throughout the Constitution, the relationships between speech and the event, et cetera, the tort law, the eggshell law. Which one of these doctrines really can the Court draw upon to come forward with a workable standard here without going to one extreme or the other? Well, I believe the Court, in this particular, the Courts of Appeals among the country, have recognized that there is a continuum of causation relating to death in the smuggling of aliens, specifically with this guideline of 2L1.1B7 and its predecessor, 2L1.1B6. At one extreme is that no causation is required. And that was originally stated by the Tenth Circuit in the Cardena-Garcia case. At the other end of the continuum relates to a case of proximate causation or foreseeability even. And this Court has even discussed that in the Ruiz-Hernandez case as well as the Eighth Circuit. There's a lot of cases on the ballpark. I'm trying to get a handle on, to the extent we could or decided to do so, how would you articulate a causal standard? The answer is that there's no need to change the but-for causation that this Court has held in Ramos-Delgado. If you literally apply the but-for causation, you can have some rather remote relationships between the defendant's conduct and what ultimately happens in one sense. I may have a precluded order, whatever, and I may be so upset by counsel's argument that I keel over. But I don't know that I – is that a but-for causation? That would not be a but-for causation. That's exactly the manner that we're presented in here. The but-for causation is a low standard. But for your argument, I'd still be around. The but-for causation is a low standard. There's no question about that. But in this case – I wouldn't want to die by a low standard. The – this Court in Ruiz-Hernandez did recognize that there are unforeseeable circumstances that can occur. And the example that came up earlier of the gas leak going to the hospital, this Court did sort of – did suggest that that might be even a but-for causation. Suppose those two guys go into – I'm sorry. Go ahead. But it wouldn't be foreseeable. Correct. The gas leak. So we should graft foreseeability. We've not foreclosed it. We just haven't done it. Is that correct? I don't – I think this – I think – That's a friendly question. Have we done it or not? I mean, have we foreclosed foreseeability or not? No. No, Your Honor. It is suggested in the De Jesus case. And it is suggested in that – again, many of the cases that discuss this suggest that even if it were – even if we were to develop a foreseeability standard, this was foreseeable. And so the – and in fact, it goes more closer to the fact that there is no causation required. But in this case, I believe that the low standard of causation that this Court has in the Ramos-Delgado case was not even met by the fact of the specific evidence of the heart disease, pre-existing heart disease of Pedro Martinez-Ariola, that that heart attack was the actual cause of death and that it was error by the district court to disregard that evidence of heart disease and assess the plus 10 level of sentencing. Thank you. We have your argument. You may proceed. May it please the Court. Eileen Wilson on behalf of the government. The district court correctly applied the 10 level enhancement for Martinez's death here. This court has clearly held that the but-for standard applies. And in the instant case, in reaching the decision that that occurred, the district court correctly relied on the unrebutted PSR, Dr. Salinas' testimony, as well as its own findings. The court specifically found that running from law enforcement was the but-for cause of Martinez's death. In other words, it wouldn't have occurred but for running and the stress associated with the smuggling operation. As counsels pointed out, it's not a difficult burden to meet. It just has to be a but-for cause of the harm. At the outset of the hearing, the district court made clear that it was very familiar with the heart issue. Dr. Salinas' testimony, which the district court adopted, talked about how the stress on the heart from running, from being in the accident, and all those types of things caused Mr. Salinas, excuse me, Mr. Martinez, to have the accident, the heart attack. The material witnesses said, excuse me, a material witness said that the aliens were told to run. And the logical conclusion is the only person that would have said that is Daniel, the smuggler. Let me see if I understand your argument. Let's suppose that two fellows decide they're going to rob a bank, and it's a very upscale bank. Can you speak a little louder? Yes. Two robbers decide they're going to go into a bank and rob them, all right? And it's a very ritzy bank, and they've got big chandeliers, and they're standing there conducting the robbery, and the chandelier breaks and falls and kills one of them. Now, but-for the robbery, he would have lived. Not foreseeable. So how do you put that into your analysis? My analysis is within the guidelines of 2.L, which is a smuggling office. You tell me how you would articulate the difference. You're saying to impose liability on the bank? Is that what you're saying? No, I'm saying that the question of his co-defendants tried, and in that context, but for the fact that the robbery, he wouldn't have had a death. Okay. So in relation to the co-conspirator, would it be foreseeable? Probably not, but if you shot at the chandelier, yes. These cases are all fact-driven. It's not- But I understand that. Most cases are, but what's the difference is it seems to be foreseeability. In other words, if he got shot in the course of that, that's a risk that attends that enterprise, correct? And on the other hand, the risk that killed him is not one that would necessarily be a thing, other than he happened to be there at that moment when the chandelier came down. But there's really two kinds of foreseeability, right? There's the co-conspirator. For example, you have Mark, who disavows having any type of foreseeability when the facts show that he was involved on the front end and at the tail end. Stay with my hypothetical. I'm trying to understand how you apply the doctrine. But for the engage in the robbery, the man wouldn't have been killed. Well, let's turn to Burrage, which this Court- Stay with my hypothetical. Right. But what Burrage showed us- You're not answering my hypothetical. Well, but what Burrage tells- Tell me what- Well, the law is if something has occurred and, you know, if a defendant does something and there was something else already going on, that that can still be a but-for-cause action. The example the Supreme Court gave in Burrage is if a victim has administered poison and was already debilitated by multiple diseases, it's a but-for-cause that that poison has killed him even if his disease played a role in the demise. And we don't need to overcomplicate it here because what we have is a smuggling operation. We know that from case law that alien smuggling is inherently dangerous. We have very experienced alien smugglers here. Both of the men said in their post-Miranda statements that they had been engaged in this for years. The police even knew they were alien smugglers. So they're on this operation, and it's very foreseeable, if the Court wants to employ that, that aliens can get hurt or that aliens can die. What if there was an earthquake? What if there was not? It wasn't. There was no. The scientist hadn't said there was going to be an earthquake and they hadn't been having tremors or anything, but it was just out of the blue, an earthquake, and he swallowed up in this fissure that's created, but he's there because he had been stopped by the smuggling thing. Is it foreseeable, and is it but for? Is it foreseeable that Martinez could have been swallowed up by an earthquake? I'm trying to figure out, is there any limit to this whatsoever? I don't think in South Texas that would be the case. Go with me. We're here at this. Right. So what happens in that situation? The Court has disavowed proximate cause, and one of the components of proximate cause is foreseeability. So is there liability in 10 years added on? Is 10 years added on if an earthquake swallows him up in the spot that he wouldn't be in, but for him being in the smuggling operation? It's not a heart attack. It's an earthquake. Well, turning to what this Court said in Ruiz-Hernandez, which the Court was actually dealing with a statutory enhancement, which admittedly is different, but I think it's insightful what the Court said. And there they were accusing the defendant of mixing up foreseeability of harm with the foreseeability of the manner in which the harm ultimately occurs. So you think we ought to be talking in terms of foreseeability? No, but the Court is talking to me about that. So that's why I responded that way. What, as I said before, proximate cause incorporates foreseeability. This Court has specifically said proximate cause will not apply, does not apply here. So the more it starts injecting foreseeability into this, it starts moving closer and closer to proximate cause. But but-for standard is low. The Court has said that. And also we're under a preponderance of the evidence. And so if the folks — But but-for standard is almost standardless. I'm sorry? But but-for standard is no standard. It happened. And so but-for, whatever it was that killed him, it's but-for is met. Unless you start to add on to some relationship to the event that it's undertaken or whatever. You can take a decision, one of the cases, of whether you have a defendant is pushing an illegal across an open water in an inner tube, and the patrol boat police comes through with no lights, runs over and kills the person. Now, there you can see that at least one of the risks that attended pushing across this channel with seafaring vessels there is the risk of being hit by one. In other words, you engage that risk, and there you have the presence of foreseeability. But these are hypotheticals that we're putting to you, which you're having difficulty responding directly to, but only for the reason to try to test what we mean and what standard we're trying to arrive at. Well, we can always conjure up outlier situations. And that's why the inquiry here is fact-driven. And then you apply the guideline. What you have is the guideline is tucked into a smuggling guideline. You're not going to get to this 10-level of what facts. See, you're fact-driven. What's the relevance of the fact? We don't know the relevance of the fact until we know the standard and the metric. But what if this man — Everything's fact-driven in the sense it happened. But what if this man had been 70? But the point is, if this man had been 70, then wouldn't a heart attack seem more foreseeable? But that's a very slippery slope. Are we then going to start looking at the age of all these aliens? That doesn't work. We have aliens who are crossed that have high blood pressure, that have diabetes, that have heart issues. Those are common things in the world these days. And so maybe you don't feed them, or maybe you don't hydrate them, or you put them in these trucks, or you tax their physicality by running. All of these things are foreseeable to the extent that the Court wants to use that in a harm that can result. Not the manner, but the harm. And so, yes, strange things could, of course, happen, an earthquake or a chandelier falling on us in this argument, what have you. There's no question about that. But that's why you always have to return to the factual inquiry and whether it stands up. The but-for-cause standard was established by the Supreme Court. This Court looked at the Eighth Circuit, the Ninth Circuit, the Tenth Circuit, and the Eleventh Circuit and found the Tenth the most persuasive. It did not want to go with the more stringent proximate cause foreseeability. And you mentioned tort before. And, right, what's a basic tort concept? That you take your tort fees, or as you find them, or the eggshell plaintiff, the thin skull, what have you. And there's some truth in this as well. You take, you're the smuggler, and you take your victims or your aliens as you find them. They don't do medical waivers or what have you. You have thousands of people over the years coming across, big, small, slow, old, whatever. But what makes this case a little bit of an outlier, right, is the fact that this guy's 28 years old. That's what captures the attention here. But it wouldn't be so much if he were 48, 58, 68. And even Judge Dr. Salinas said something, yeah, you tend to see this in 30s, 40s, 50s. But, obviously, the older one gets, the more you're going to see an occlusion in the heart. We even see this in children these days who are athletes. But the standard that this court has decided to employ is but for this. So but for Mark and David's, excuse me, Mark and Daniel's actions, did this or not, did this or did this not occur to Martinez? Did the harm occur to Martinez? If the court, as I said, wants to inject foreseeability into it, then, by nature, alien smuggling is going, you're going to see physical injuries, you're going to see deaths. But how they occur is different from the analysis of the but for. I'm not sure that part exactly makes sense. But, as I said before, and Ruiz-Hernandez said, it's the foreseeability of harm as opposed to the manner. And these extreme examples, there's always going to be room for this. Because in Ruiz, the court went on to say that the precise nature of the resulting injury and the manner of the infliction is immaterial so long as the injury is of a type that, in the circumstances, might reasonably be foreseeable. So in the circumstances in South Texas, you don't expect an earthquake. So the answer to my hypo is no TIN level enhancement in that case? Right. I didn't know that you had answered it yet. Yes. But that's what I'm saying. It's an extreme example. And, again, in Ruiz, this court was using the statutory enhancement, and I fully recognize there are different considerations with that. But the policy and the workability of it still flows nicely with our issue, with the TIN level. Does this TIN level apply if it's a third party? I can't remember. I'm sorry? Does the TIN level apply if a third party is injured or hurt, or does it only have the person being smuggled? I believe it says if something happens in that situation, correct. Yes. I have it. It's in the statute under specific characteristics. So how far down the road would it have to be to where it was no longer but for in that context? You know, suppose he falls. He has a heart attack, but he's not dead. In the street, once he gets let out, he makes his way to the nearest town, and someone swerves to miss his body in the road, and they are killed in a car accident when they hit a pole. Is that still but for the smuggling? He wouldn't have made it to the town. Or is there a part where it becomes too attenuated even at that level? Because he wouldn't be in the situation. Well, the court has said it doesn't matter whether the initial action directly results in the harm, but only that the harm wouldn't occur but for the initial action. So if he dies maybe because you ran over his leg and he was hemorrhaged, then maybe that wouldn't apply in that situation. However, if it exacerbated the heart, you know, if he was already pulsating and what have you, then maybe it would. But we would have to see more, I think. We'd have to hear what a physician said or some type of information. Why wouldn't that all be but for? Well, but for is so, you know, but for my parents, I wouldn't be here today. You know, that's. Well, that's true. It is true. I mean, so what's that? So because it's like that, why isn't it true that the person wouldn't have gotten hit by the car, wouldn't have hit the pole in their car and died but for him lying in the road, but he wouldn't have been in the road but for the, I mean. I think this enhancement clearly requires a great deal of responsibility on the district court judge's part and then, of course, your part. And it has to be carefully employed. There's no question. A 10-level bump is enormous. And that's why I would never argue that it would be harmless error because, of course, it's harmless. How does the 10-level bump translate in terms of time? It's in Mr. Sokolow's brief, but it's pretty substantial. Was it almost 40 months or something? I forget. But what happened here, too, is the judge here thought that both brothers' criminal histories were overrepresented, so he also made adjustments downward to those. And instead of just saying they're too high, he moved Daniel from 6 to 4 and Mark, I think it was, from 3 to 2. So he actually made these other findings and then went down. So it's clearly 10 levels is huge. And, you know, the law on double counting, all of that is clear, what have you. And I realize that they were other enhancements, and the Court explained what they were for. And, of course, the counsel has not appealed those. And I understand the Court's concern with applying this, but so far in the cases that have existed coming out of this circuit, the Court has carefully managed the facts before it. And it has reserved the foreseeability, as you asked previously. Let me comment about that. As I read these cases, while the Court is eschewing the application of foreseeability, they seem to sort on the basis that the presence of foreseeability is informing these decisions. That is, when it's complete absence of foreseeability, then it seems to be the but-for, say it another way, the but-for in application tends to be informed by foreseeability while the Court is simultaneously saying, we don't adopt that. They don't say they're adopting it because the proximal cause sounds like, well, that goes too far the other way. And the difficulty is, where is the intermediate position? That's right. In administration, you're right that the only thing that saves us from complete irrationality is a good judgment of a district court. Well, I see that my time is almost up. But, yes, it has been like dancing on the head of a pin in a certain way, because you have these cases that are around the perimeter. You have in the middle, you have this Court disavowing proximate cause. But I realize the Court also wants to inject a sense of fairness, if nothing else, to this, that is it fair to tax or to bump up somebody for ten levels if they never could see this coming. And I appreciate all that, and I understand all that. But that's why, as I've said before, the facts, the Court has to look at the situation in conjunction with the facts. And I think that's why a lot of these opinions have been fairly tightly drawn with those particular facts. In more direct terms, what the law is trying to get at is if you go out and engage in a criminal enterprise, the consequence of which is a death, then that enterprise is far more severe and ought to be accounted for in the Senate. But that's sort of a general purpose of this, in trying to achieve that purpose. However, you have to sort the cases, and that's the thing we're struggling with here. And I think it would probably be fair to say that to a certain extent we probably all struggled with that with our preparation as well. But I see that my time is up, so unless the Court has any other questions, I'll yield. Thank you. Thank you, Your Honors. Just briefly, the government's argument is completely contrary to Barrage. Barrage held that but-for cause means when the defendant's conduct is not an independently sufficient cause of death, the defendant cannot be held liable. The government wants to talk about the eggshell skull rule. That is completely contrary to Barrage. The victim in Barrage had taken two drugs, and then he bought heroin and took the defendant's heroin. And the Supreme Court didn't say eggshell skull rule, the defendant's responsible. It said the heroin had to be an independently — an independent cause of death. So everything the government has said about this slippery slope is wrong and contrary to Barrage. And that, Judge Higginbotham, is the workable standard. That's the standard the Supreme Court and this Court has adopted. The only other thing I would add is when I heard my co-counsel talking about foreseeability and the cases assuming foreseeability, he followed that with the phrase something like — and it was foreseeable. And I hope — I think he was talking about the cases. He wasn't making any admission in this case that this — in this case, it was foreseeable. Your Honors, because the death was not — the defendant's conduct was not the but-for cause of death in this case, because the defendant's conduct was not independently sufficient to cause the death, and because the death was not foreseeable, I request that you vacate the sentence and remand for resentencing. Thank you very much. Your Honors, in the — just to final recap, the Ruiz-Hernandez case, which we have discussed, which involved the swimming across the Brownsville Ship Channel, this Court did held that there could be more than one but-for causes of death in this — in that case. The — and even if one of the — only one of those was the actual cause of death, then an enhancement would be proper. I would remind the Court that the evidence was very clear about the actual cause of death. The actual cause of death, according to the pathologist who did the autopsy, Dr. Salinas, again, you know, said the actual cause of death was a total occlusion of the left anterior descending artery. The — that would — and it — believe that the record supports that that death from the heart attack would have occurred whether or not he had been involved in this immigrant smuggling. I would request that, again, the Court remand the case to the U.S. District Court for sentencing without the plus-10 level enhancement under 2L1.1B7. Thank you, Counsel. We have your argument. This case is submitted.